# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

WISCONSIN ELECTRICAL EMPLOYEES
HEALTH AND WELFARE PLAN,
WISCONSIN NECA-IBEW RETIREMENT PLAN,
KENOSHA AREA ELECTRICAL JOINT
APPRENTICESHIP AND TRAINING TRUST FUND,
WISCONSIN ELECTRICAL EMPLOYEES
APPRENTICESHIP COORDINATOR FUND,
IBEW LOCAL 127 UNION DUES FUND, and
IBEW LOCAL 127 VACATION AND HOLIDAY PAY FUND,

           Plaintiffs,

    v.                              Case No. 14-CV-521

KMS ELECTRIC, LLC,

           Defendant.

## DECISION AND ORDER

### INTRODUCTION

The above-named plaintiffs (together "the Funds") allege in a complaint that defendant KMS Electric, LLC did not abide by its contractual obligation to make contributions to employee retirement accounts. (ECF No. 1.) The Funds' role in this matter is as fiduciaries of a retirement plan. On November 13, 2014, the Funds filed a

motion for summary judgment. (ECF No. 15.) On January 6, 2015, KMS responded. (ECF No. 18.) Three months later, on April 8, 2015, KMS moved to supplement its response. (ECF No. 22.) The parties have consented to magistrate judge jurisdiction. (ECF Nos. 20, 21.) The Funds' motion for summary judgment and KMS's motion for leave to file a supplemental response are ready for review.

## ANALYSIS

### I. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable finder of fact could accept the non-moving party's position and return a verdict in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from that evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008)); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001). The "court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)). "To survive summary judgment, the

nonmovant must produce sufficient admissible evidence, taken in the light most favorable to it, to return a jury verdict in its favor." *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012) (quoting *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 690-91 (7th Cir. 2010)).

**II.    KMS's Motion to Supplement Response**

A preliminary issue is whether the court should consider either KMS's initial response or its supplemental response when reviewing the Funds' motion for summary judgment. In this district, a nonmoving party has thirty days in which to respond to a motion for summary judgment. Civ. L.R. 56. The Funds filed their motion for summary judgment on November 13, 2014, supported by three affidavits, and then filed two amended affidavits on December 2, 2014. (ECF Nos. 15, 16, 17.) Taking the latter date as the date that triggered the running of the 30-day clock for KMS to respond and adding three days pursuant to Federal Rule of Civil Procedure 6(d) and another day to avoid falling on a weekend, KMS's response was due on January 5, 2015. KMS responded on January 6, 2015. Three months later, on April 8, 2015, it moved to supplement its response.

Extensions may be granted after a deadline when a party showing its untimeliness was due to "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). The standard of excusable neglect

> is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include…the danger of prejudice

3

to the [nonmoving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 395 (1993).

KMS provided no justification for its initial response being filed late, albeit only one day late. *See Harrington v. City of Chicago*, 433 F.3d 542, 547 (7th Cir. 2006) ("[I]t was incumbent upon [the parties] to seek an extension."). The bigger problem with KMS's response was that it did not comply with this district's local rules. Parties are required to strictly adhere to the local rules governing summary judgment. *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000) ("Given their importance, we have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment."); *see also Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) ("Substantial compliance" with local rules governing summary judgment "is not strict compliance."). Captioned "Motion in Opposition to Plaintiff's Motion for Summary Judgment," KMS's response consisted of three affidavits with some documents attached. (ECF No. 18.) It filed no memorandum of law or response to the Funds' proposed statement of facts as required under Civil Local Rules 56(b)(2)(A) and (B).

Still, excusable neglect is an equitable standard that "is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer*, 507 U.S. at 392; *see also Robb v. Norfolk & W. Ry. Co.*, 122 F.3d 354, 361 (7th Cir. 1997). KMS's

failure to comply with the local rules, although serious, ultimately will not affect this court's decision regarding the Funds' summary judgment motion. Therefore, the court will accept KMS's initial response.

In an effort to rectify the shortcomings of its initial response, over three months after its response was due KMS sought leave to file a supplemental response. (ECF No. 22.) KMS did not provide an acceptable reason for the delay. It asserts that any error in its initial response was attributable to the fact that defense counsel practices primarily in state court and was unfamiliar with federal civil procedure. Even if this reason would otherwise constitute excusable neglect, the Funds' reply brief should have alerted KMS that its response was both late and substantively deficient. Section two of the reply brief was entitled "KMS ELECTRIC FAILED TO FOLLOW THE LOCAL RULES," and section three, entitled "KMS ELECTRIC'S RESPONSE WAS UNTIMELY," stated that "[t]he response was due within 30 days….*See* Civil L.R. 56(b)(2)." (ECF NO. 19 at 5.) Notwithstanding such notice, KMS did not attempt to remedy its shortcomings until months later. In weighing the equitable factors articulated in *Pioneer*, KMS has failed to show excusable neglect. Its motion to file a supplemental response is denied.

III.   **Findings of Facts**

The following facts are uncontested and supported by the record. The Funds are multi-employer, self-funded employee benefit funds as defined under the Employee Retirement Income Security Act of 1974 (ERISA). (ECF No. 14, ¶ 1.) The Funds are

5
Case 2:14-cv-00521-WED   Filed 07/23/15   Page 5 of 13   Document 27

funded by contributions received from participating employers pursuant to a written collective bargaining agreement[1] (CBA) between Local No. 127, International Brotherhood of Electrical Workers, AFL-CIO (the Union), and Kenosha Division, Wisconsin Chapter, N.E.C.A., Inc. (ECF No. 14, ¶ 5.) The Funds use those contributions to provide benefits for covered participants and members. (ECF No. 14, ¶ 6.)

KMS is a manager-managed limited liability company organized under Wisconsin law. (ECF No. 14, ¶ 3-4.) On November 7, 2011, Kenneth Grandow, Sr. signed a Letter of Assent on behalf of KMS, and on November 9, 2011, the Union signed the Letter of Assent. (ECF No. 14, ¶ 7-8.) The Letter of Assent purports to bind KMS and the Union to the CBA. (ECF No. 14, ¶ 7.) The CBA, in turn, requires all signatory employers to file employee work status reports and to make timely contributions to specified funds for all covered employees. (ECF No. 14, ¶ 17.)

At the time Grandow signed the Letter of Assent, he was a member of KMS and represented to the Union that he was "owner" of KMS. (ECF No. 14, ¶ 9.) Grandow signed two documents as "Managing Member" of KMS on December 12, 2012, an "Annual Report" and a "Resolution for the Admission of Members pursuant to § 183.0801." (ECF No. 14, ¶ 10.) He signed a KMS Annual Report dated February 1, 2013, as "manager." (ECF No. 14, ¶ 11.)

---

[1] The CBA was amended on June 1, 2012. (ECF No. 16-1 at 30.) Because the amendments do not affect the Funds' motion for summary judgment, any reference to the CBA applies equally to both versions.

## IV. Funds' Motion for Summary Judgment

The Funds' complaint sets forth two claims, both of which turn on KMS's alleged failure to make contributions to the Funds in accordance with the terms and conditions of the CBA. The first claim arises under Section 515 of ERISA, 29 U.S.C. § 1145. (ECF No. 1 at 7-8.) The second alleges that KMS breached the Funds' Trust Agreements. (ECF No. 1 at 8-9.) Liability for both claims requires that the Funds prove three things: (1) that KMS is bound to the CBA; (2) that the CBA obligated KMS to contribute a certain amount of money to the Funds based on the amount of covered work performed by KMS employees; and (3) that KMS employees performed work covered under the CBA. *See Laborers' Pension Fund v. A & C Envtl., Inc.*, 301 F.3d 768, 782 (7th Cir. 2002).

For KMS to be liable for delinquent contributions (under ERISA or under the CBA), it first must be bound to the CBA. An employer is bound to a collective bargaining agreement upon either an agent's signature or the employer's conforming conduct. *Operating Engineers Local 139 Health Benefit Fund v. Gustafson Const. Corp.*, 258 F.3d 645, 650 (7th Cir. 2001). Purporting to act on KMS's behalf, Grandow signed the Letter of Assent. (ECF No. 14, ¶ 7.)

The Funds assert that, for purposes of the ERISA claim, Grandow's signature bound KMS to the Letter of Assent (and, thus, to the CBA) regardless of whether he had authority to bind KMS to such agreements. According to the Funds, "it is not a valid defense to an ERISA Section 515 claim that the individual who signed the letter of

assent did not have the authority to do so." (ECF No. 13 at 6.) If that were true, then an employer could be bound to a CBA by *anyone's* signature. Case law says that is not so. *See Sullivan v. Cox*, 78 F.3d 322, 326 (7th Cir. 1996) (finding in ERISA action a genuine issue of material fact whether individual had actual or apparent authority under Illinois law to bind corporation to collective bargaining agreement); *see also Trustees of the Ohio Bricklayers Pension Fund v. Skillcraft Sys. of Toledo, Inc.*, 99 F. App'x 600, 601 (6th Cir. 2004) (affirming employee did not have actual or apparent authority to bind employer in ERISA action); *Bd. of Trustees of Plumbers' Local Union No. 93 U.A. v. Encotech Const. Servs., Inc.*, No. 07 C 1901, 2010 WL 1994472, at *6 (N.D. Ill. May 14, 2010) (discussing whether authorized representative of employer signing monthly reports bound employer in ERISA action); *Residential Reroofers Local 30-B Health & Welfare Fund of Philadelphia & Vicinity v. A & B Metal & Roofing, Inc.*, 976 F. Supp. 341, 345 (E.D. Pa. 1997) (discussing whether former president had apparent authority to bind company in ERISA action); *Trustees of Plasters Local 67 Pension Trust Fund v. Martin McMahon Plastering, Inc.*, 844 F. Supp. 2d 843, 852 (E.D. Mich. 2012) (finding wife of self-employed union plasterer lacked actual and apparent authority to bind company in ERISA action).

To establish KMS's consent to the CBA by way of Grandow's signature, Grandow must have had either actual or apparent authority to act on behalf of KMS. *See, e.g.*, *Sullivan*, 78 F.3d at 326. Wisconsin law will guide the question of authority, "so long as the state law is not contrary to ERISA." *Id*. Actual authority "is the power of the

agent to do an act on account of the principal which, with respect to the principal, he or she is privileged to do because of the principal's manifestations to him or her." *Mared Indus., Inc. v. Mansfield*, 2005 WI 5, ¶ 23, 277 Wis. 2d 350, 367-68 (brackets and citation omitted).

   A.   *Actual Authority*

KMS was organized under Wisconsin law as a manager-managed limited liability company. (ECF No. 14, ¶¶ 3-4.) Under Wisconsin law, only managers have authority to bind a manager-managed limited liability company. Wis. Stat. § 183.0301(2). Grandow signed the Letter of Assent not as "manager" but as "owner" of KMS—which does not by itself vest him with authority to bind KMS. *See* Wis. Stat. § 183.0301(3) ("No act of a member…shall bind the limited liability company unless in fact authorized at the time of the transaction or at any other time."). Although he did sign other documents as a manager of KMS, they were dated more than a year after he signed the Letter of Assent (*see, e.g.*, ECF No. 14, ¶ 11) and do not demonstrate that he had authority to bind KMS at the time he signed the Letter of Assent. Construing the facts in the light most favorable to KMS, as the court must on summary judgment, the Funds have not established as a matter of law that Grandow possessed actual authority to bind KMS to the CBA when he signed the Letter of Assent.

## B. Apparent Authority

It is not at all clear that the Funds are even pursuing an apparent authority argument. They state that, "[b]ased on his title and position as 'Managing Member' of KMS Electric, Mr. Grandow's signature was binding with respect to KMS Electric because there is nothing to suggest that the union or the Funds had knowledge of Mr. Grandow's purported lack of authority." (ECF No. 13 at 13.) That *kind of* sounds like an apparent authority argument, although the Funds do not characterize it as such.

Apparent authority exists when the following facts are present: "(1) acts by the agent or principal justifying belief in the agency; (2) knowledge thereof by the party sought to be held; and (3) reliance thereon by the plaintiff consistent with ordinary care and prudence." *Lamoreux v. Oreck*, 2004 WI App 160, ¶ 52, 275 Wis. 2d 801, 830; *see also Mared*, 277 Wis. 2d 350, ¶ 22. Actions of the alleged agent alone are insufficient to establish apparent authority. *Howard v. Saint Thomas More High Sch.*, No. 09-C-0391, 2010 WL 3937632, at *7 (E.D. Wis. Oct. 6, 2010). "[T]he apparent authority for which the principal may be liable *must be traceable to him*, and cannot be established solely by the acts and conduct of the agent; the principal is only liable for *that appearance of authority caused by himself.*" *Amplicon, Inc. v. Marshfield Clinic*, 786 F.Supp. 1469, 1476 (W.D. Wis. 1992) (quoting *Sater v. Cities Service Oil Co.*, 235 Wis. 32, 40 (1940)); s*ee also Wagan, LLC v. Rathbun*, 2011 WI App 143, ¶ 22, 337 Wis. 2d 557 (unpublished).

Although the Funds state that they *believed* that Grandow had authority to sign the Letter of Assent on behalf of KMS (ECF No. 14, ¶13), they do not articulate the basis for that belief—other than that he signed other documents as "Managing Member" (ECF No. 13 at 13), which coming as they did a year later could not have been the basis for their belief that he had authority when he signed the Letter of Assent. Nor do the Funds establish that KMS knew that Grandow was acting on its behalf and acquiesced. *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Engineers, Inc.*, 755 F.3d 832, 838 (7th Cir. 2014) (interpreting Wisconsin agency law). For example, the Funds have not offered any facts demonstrating that Grandow was the only employee of KMS at the time he signed the Letter of Assent and that, as a result, KMS necessarily knew what he was doing. In short, the Funds have not established as a matter of law that Grandow possessed apparent authority to bind KMS to the CBA.

C. *Employer's Conduct*

An employer may still be bound to a collective bargaining agreement without an agent's binding signature. "[A] signature to a collective bargaining agreement is not a prerequisite to finding an employer bound to that agreement." *Bricklayers Local 21 of Illinois Apprenticeship & Training Program v. Banner Restoration, Inc*, 385 F.3d 761, 767 (7th Cir. 2004). "Acceptance…can be manifested by conduct as well as by words." *Gustafson Const. Corp.*, 258 F.3d at 650. One way an employer may manifest an intent to be bound

to a collective bargaining agreement is by regularly contributing to fringe benefit funds. *Banner*, 385 F.3d at 766.

In the Funds' brief in support of summary judgment, they assert that KMS "did make some contributions to the Funds." (ECF No. 13 at 14.) However, they make that assertion without citation to the record, in violation of Civil Local Rule 56(b)(6). In reviewing the record, none of the affidavits that the Funds submit in support of their motion clearly state that KMS made some contributions to the Funds (let alone, the amount KMS contributed), nor do any of the Funds' proposed statements of fact say so. The Funds do not offer any other examples of KMS's conduct that would bind it to the CBA. *See, e.g.*, *Banner*, 385 F.3d at 766 (listing conduct exhibiting an employer's consent, which include "the payment of union wages, the remission of union dues,…the existence of other agreements evidencing assent and the submission of the employer to union jurisdiction…."). As a result, the Funds have not provided the court with any evidence (undisputed or otherwise) of KMS conduct that establishes its acceptance of the CBA.

It is the Funds' burden to show they are entitled to a judgment as a matter of law. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). By not submitting uncontroverted facts that show KMS is bound to the CBA, they have not met their burden.

**IT IS THEREFORE ORDERED** that the defendant's Motion for Leave to File Supplemental Response (ECF No. 22) is **denied**.

**IT IS FURTHER ORDERED** that the plaintiffs' Motion for Summary Judgment (ECF No. 15) is **denied**.

Dated at Milwaukee, Wisconsin this 23rd day of July, 2015.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge